```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

MABEL MARIE GOLF,

                    Plaintiff,
                                              13 Civ. 2865 (RWS)
     - against -
                                                   OPINION

NEW YORK CITY DEPARTMENT OF FINANCE,
NEW YORK STATE DIVISION OF HUMAN RIGHTS,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:


     PRO SE

     MABEL MARIE GOLF
     87-50 167th Street, Apt. #6M
     Jamaica, NY 11432


     ATTORNEYS FOR CITY DEFENDANT

     MICHAEL A. CARDOZO
     CORPORATION COUNSEL OF THE CITY OF NEW YORK
     100 Church Street
     New York, NY  10007
     By:  Benjamin F. Tracy, Esq.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/23/14

**Sweet, D.J.**

Defendants New York City Department of Finance ("DOF") and New York State Division of Human Rights ("SDHR") (collectively the "Defendants" or "City Defendants") has moved pursuant to Federal Rules of Civil Procedure 12(b) to dismiss *pro se* plaintiff Mabel Marie Golf's ("Golf" or the "Plaintiff") Complaint (the "Complaint"). Based on the conclusions set forth below, City Defendants' motion is granted, and the Plaintiff is granted leave to replead within 20 days.

**Prior Proceedings**

The Complaint alleges that Plaintiff was forced to retire from her position at the DOF on September 1, 2011 as a result of disability discrimination. Plaintiff has previously asserted that she was forced to retire due to disability discrimination in other fora. On April 6, 2012, Plaintiff filed a verified complaint with the SDHR that alleged that she was harassed and forced to retire as a result of her disability, race, sex and in retaliation for opposing such discrimination (the "SDHR Proceeding"). (Tracy Decl., Ex. A, at 2). Plaintiff also alleged that she was sexually harassed in her sleep by a DOF manager in 2006 and 2011, was retaliated against and that

1

"she was denied promotions and salary increases because of her sex and race." (*Id.* at 1-2). In a determination dated July 18, 2012, the Director of the SDHR's Office of Sexual Harassment issues found no probable cause to believe that the DOF engaged in any of the unlawful discriminatory practices set forth in Plaintiff's complaint in the SDHR Proceeding (the "SDHR Determination"). (*Id.*).

After the SDHR received Plaintiff's complaint, the complaint was forwarded to the United States Equal Employment Opportunity Commission ("EEOC"). On January 22, 2013, the EEOC issued a Dismissal and Notice of Rights in regard to Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"), as codified, 42 U.S.C. §§ 12112-12117.

On November 28, 2012, Plaintiff commenced a special proceeding in the Supreme Court of the State of New York, New York County, against DOF, SDHR, and Plaintiff's union, CWA Local 1180 Legal Department, challenging the SDHR Determination (the "NY Action"). (*See id.*, Ex. B, at 3; *Golf v. N.Y.C. Dep't of Finance*, Index No. 402479/2012 (N.Y. Sup. Ct. June 3, 2013)). In a decision dated June 7, 2013 (the "NY Opinion" or "Opinion"), the Honorable Eileen A. Rakower denied the petition

and dismissed the proceeding on the grounds that the petition was time-barred because Plaintiff failed to bring the proceeding within sixty days of service of the order of SDHR, as required by 22 NYCRR § 202.57(a) and New York Executive Law § 298. (Tracy Decl., Ex. B, at 4). The Opinion held that even if the petition were timely, the record demonstrated that all actions taken had a legitimate business reason because two medical evaluations found Plaintiff mentally unfit to perform the duties of her job. (*Id.* at 4).

Plaintiff filed the Complaint in the Southern District of New York on April 26, 2013. City Defendants filed the instant motion on November 27, 2013. Briefing was submitted, and the matter was marked fully submitted on January 22, 2014.

**Allegations of the Complaint**

Because this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), many of the following facts, which this Court assumes to be true, are drawn from the Complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ("[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which

3

relief can be granted, accept all factual allegations in the complaint as true."). Other facts are drawn from matters of public record or attached to the Complaint as exhibits of which this Court takes judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court resolving a motion to dismiss can consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action); *Lakonia Management Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000) (court may also properly consider any document attached to the complaint as an exhibit or incorporated in it by reference, as well as matters of public record of which it can take judicial notice).

Plaintiff is a former Principal Administrative Associate with the DOF. (SDHR Determination, Tracy Decl., Ex. A, at 1). In 2011, Plaintiff had a pattern of excessive lateness and was subsequently referred to the DOF Advocate's Office to discuss this issue. (*Id.* at 2). When interviewed by the DOF Advocate's representative, Plaintiff stated that the lateness issues were the result of her co-workers coming into

4

her bedroom at night and shaking her bed, which interrupted her sleep. (*Id.*). Based on this interview, the DOF Advocate's Office referred Plaintiff for a medical evaluation, pursuant to New York Civil Service Law § 72, to determine whether Plaintiff was medically fit to perform her DOF duties. (*Id.*).

On March 30, 2011, Plaintiff was examined by Doctor Azariah Eshkenazi ("Dr. Eshkenazi"), a Diplomate of the American Board of Psychiatry and Neurology and an Assistant Professor of Psychiatry at Mount Sinai School of Medicine, who found Plaintiff to be mentally unfit to perform her duties at DOF. (*Id.* at 2; Compl., Ex. 3). Based on this assessment, the DOF began the process of placing Plaintiff on an involuntary leave of absence under Civil Service Law § 72. (SDHR Determination, Tracy Decl., Ex. A, at 2). On May 25, 2011, a pre-trial hearing was held at the Office of Administrative Trials and Hearings ("OATH") and the administrative law judge ("ALJ") ordered Plaintiff "to undergo a second medical evaluation to confirm whether or not she was fit to perform her duties." (*Id.*). On July 3, 2011, Dr. Eshkenazi re-examined Plaintiff and again determined that she was unfit to perform her duties. (*Id.*). Dr. Eshkenazi found that Plaintiff suffered from delusions of persecution and visual hallucinations. (Compl., Ex. 3). Plaintiff voluntarily retired as of September 1, 2011. (SDHR

5

Determination, Tracy Decl., Ex. A, at 2).

The Complaint alleges that Defendants violated the American with Disabilities Act ("ADA") when she was placed on involuntary leave without the DOF seeking to provide her with reasonable accommodations. The Complaint further brings claims against the SDHR based on their handling of the SDHR Proceeding. Plaintiff alleges that the charges she brought in the SDHR Proceeding were dismissed without a discussion of the results of the investigation. Plaintiff further seeks compensatory damages because she "may be a Whistle Blower [sic]." (Compl. at 7).

Plaintiff alleges that she was served with a notice of involuntary leave on April 8, 2011, which came as a result of her tardiness to work. (Id. at 3). The Complaint alleges Plaintiff's pattern of lateness was due to at least two co-workers using their "paranormal powers mischeviously [sic]" which caused irregular sleep patterns with Plaintiff and "might have caused lateness to work." (Id.). Plaintiff has visited a neurologist, who took an MRI and EEG scan of Plaintiff's brain. No abnormalities were found in the tests. (Id., Exs. 4, 5).

**The Applicable Standard**

6

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Though the Court must accept the factual allegations of a complaint as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 129 S.Ct. at 1950 (quoting *Twombly*, 550 U.S. at 555).

7

*Plaintiff's Claims Are Barred by the Doctrines of*
<u>*Res Judicata and Collateral Estoppel*</u>

Pursuant to the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In determining whether or not a prior judgment has preclusive effect on a subsequent action, courts look to "whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *NLRB v. United Tech., Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)). Thus, to establish the affirmative defense of *res judicata*, "a party must show that 1) the previous action involved an adjudication on the merits; 2) the previous action involved the plaintiff[ ] or those in privity with [the plaintiff]; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.*

"In considering the preclusive effect of a state court judgment on a subsequent federal action," a court must "consult

8

the preclusion laws of the state in which the judgment was issued." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 71 (2d Cir. 2006). Under New York law, *res judicata* applies "if both causes of action are grounded on the same gravamen or are part of the same 'factual grouping,' even if the later claim is brought under a different theory of recovery." *Kirkland*, 828 F.2d at 110. In New York State, a dismissal on statute of limitations grounds is a dismissal on the merits for purposes of the application of the doctrine of *res judicata*. *See Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369-70 (2d Cir. 2010) (accepting that dismissal of a state court review of a SDHR decision as untimely is a decision on the merits for *res judicata* purposes); *Kirkland v. City of Peekskill*, 828 F.2d 104, 110 (2d Cir. 1987) (giving preclusive effect to a state court review of a SDHR decision that was dismissed as untimely); *see also Wang v. Wang*, 96 A.D.3d 1005, 1007 (2d Dep't 2012) ("The dismissal of a claim on the ground that the statute of limitations has run is a determination on the merits for *res judicata* purposes.").

Plaintiff previously filed a complaint in the SDHR Proceeding alleging that she was subject to sexual harassment on account of her race and sex, as well as for her alleged disability, and claimed that she was forced into retirement as a

9

product of that discrimination. (SDHR Determination, Tracy Decl., Ex. A., at 1). Plaintiff had the opportunity to present evidence to the SDHR in support of her claims, but the SDHR dismissed Plaintiff's complaint. (*Id.* at 2-3). Plaintiff then commenced the NY Action in the New York State Supreme Court to review the SDHR Determination. The NY Action affirmed the SDHR Determination, and found Plaintiff's claims both untimely and meritless. (NY Opinion, Tracy Decl., Ex. B). Plaintiff litigated the precise claims at issue, disability discrimination relating to employment, in this action before both the SDHR and the New York Supreme Court. Given such, the Complaint is barred pursuant to the doctrine of *res judicata* from relitigating these claims.

The claims in the Complaint are also barred by the doctrine of collateral estoppel. The doctrine of collateral estoppel or issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Under federal law, the doctrine of collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue;

10

and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Austin v. Downs, Rachlin & Martin*, 270 F. App'x 52, 54 (2d Cir. 2008); *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999). Similarly, applying New York law, a federal court must give preclusive effect to a state court judgment where "the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *Lafleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (citing *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999)).

A party who sought state court review of a no probable finding by the SDHR is barred from relitigating his discrimination and retaliation claims in federal court as he has fully and fairly litigated that claim. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982); *see Yan Yam Koo v. Dep't of Bldgs.*, 218 F. App'x. 97, 98 (2d Cir. 2007) ("New York state court affirmation of the [SDHR's] finding of no probable cause would preclude federal litigation based on the same facts"); *Lewis v. Health and Hosps. Corp.*, 11 Civ. 0099, 2013 U.S. Dist. LEXIS 77668, at *9-15 (S.D.N.Y. June 3, 2013) (same); *Wilson v. Ltd. Brands, Inc.*, 08 CV 3431, 2009 U.S. Dist. LEXIS 37576, at

11

*2 (S.D.N.Y. Apr. 17, 2009) (same). State court review of a SDHR finding affords a Plaintiff a full and fair opportunity to litigate his claims of discrimination following a no probable cause finding. *Kremer*, 456 U.S. at 485.

Plaintiff had previously raised the issue of discrimination on the basis of her disability before both the SDHR and the New York State Supreme Court. Plaintiff had the opportunity to fully and fairly litigation this identical issue in those fora. Plaintiff's prior litigation and the instant Complaint are all based on the same claims: that Plaintiff was subjected to discrimination on the basis of her disability. Consequently, the Complaint is barred by the doctrine of collateral estoppel and must be dismissed against the Defendants.

*The Complaint Fails To State A Claim*
*Upon Which Relief Can Be Granted*

Plaintiff has claimed violations of the ADA, which makes it illegal for a "covered entity" to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and

12

other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a claim of disability discrimination under the ADA, "a plaintiff must show (1) that defendant is covered by the ADA; (2) that plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) that plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) that plaintiff suffered an adverse employment action because of his disability or perceived disability." *Whitehead v. UPS*, 387 F. App'x 16, 18 (2d Cir. 2010) (internal citation omitted).  Although at the pleading stage, establishing a prima facie case of employment discrimination is not required, the elements of a prima facie case provide an outline of what allegations are necessary to render plaintiff's claim plausible. *Idlisan v. N.Y.C. Health and Hosps. Corp.*, 12 Civ. 9163, 2013 U.S. Dist. LEXIS 163151, at *12-13 (S.D.N.Y. Nov. 15, 2013).

A claim for reasonable accommodation under the ADA requires that a plaintiff plead that: "'(1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer

13

has refused to make such accommodations.'" *McBride v. BIC Consumer Prods. Mfg.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)).

Plaintiff has failed to sufficiently plead that she was either disabled within the meaning of the ADA, 42 U.S.C. § 12102, or that her voluntary retirement was an adverse employment action. In addition, Plaintiff does not plead that she was qualified to perform the essential functions of her job with DOF. Although the Complaint includes a letter from a doctor who provided psychiatric treatment to Plaintiff that stated Plaintiff "is capable of fulfilling her full time job responsibilities" (Compl., Ex. 5), the letter does not establish the basis as to how the doctor came to this conclusion or if the doctor knew the qualities necessary to perform the functions of Plaintiff's former job. Plaintiff suffered from delusions of prosecution and visual hallucinations. The letter does suggest several accommodations for Plaintiff at her work, such as that Plaintiff should be allowed to start work at 10:30 AM two times a week for at least the next three months, take frequent 5-10 minute breaks during the day and stay off work for one day every two weeks in the next three months. (*Id.*). The letter does not specify as to how the accommodations would help Plaintiff's symptoms in a way that would allow her to perform the essential

14

functions of her former job. The Complaint fails to provide any explanations as well.

Moreover, Plaintiff was evaluated by Dr. Eshkenazi on two separate occasions. (Compl., Ex. 3). Dr. Eshkenazi conducted his own evaluation of the Plaintiff as well as consulted Plaintiff's psychiatrist. (*See id.*). After both evaluations, Dr. Eshkenazi found the Plaintiff unfit to perform the duties of her position, regardless of accommodation. (*Id.*). Plaintiff contends she was improperly diagnosed by Dr. Eshkenazi due to his failure to perform any physical tests, such as examining her heart or knee (Opp., at 1-2), but given the thoroughness of Dr. Eshkenazi's second examination (Compl., ex. 3), nothing suggests that Dr. Eshkenazi's two evaluations were inadequate. Given such, Plaintiff has failed to sufficiently plead allegations that would allow an inference that she was fit to perform her duties at the DOF, with or without accommodation.

City Defendants further contend that Plaintiff has failed to state a claim for First Amendment retaliation. The Defendants propose this argument on the basis that Plaintiff states that the grounds for her Complaint lie in federal law, and the Defendants interpret Plaintiff's comment that she "may be a Whistle Blower [sic]" in the "Relief" section of her

15

Complaint to refer to a possible First Amendment retaliation claim.

"'[T]o establish a First Amendment retaliation claim, plaintiffs must prove that: (1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision.'" *D'Olimpio v. Crisafi*, 462 F. App'x. 79, 80 (2d Cir. 2012) (quoting Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006)).

Plaintiff makes no allegation that any statement she made was a cause for an adverse employment action. Moreover, Plaintiff has not alleged that any statements she made touches upon a matter of public concern. The statements Plaintiff alleges only pertain to a personal grievance; no broader public purpose can be inferred from her statements. Plaintiff is unable to make out any element of a case for First Amendment retaliation.

**Conclusions**

Based on the conclusions set forth above, the City Defendants' motion to dismiss is granted. The Complaint is dismissed with leave to replead in 20 days.

It is so ordered.

**New York, NY**
**April 23, 2014**

_____
ROBERT W. SWEET
U.S.D.J.